# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | :
| STATE CAPITAL TITLE & | :
| ABSTRACT COMPANY | :
| | :
|      Plaintiff, | :      Civil Action No. 3:08-cv-3619-FLW
| | :
| | :
|      v. | :
| | :
| PAPPAS BUSINESS SERVICES, LLC; | :
| GARY J. PAPPAS; | :
| MARY E. PAPPAS | :
| | :      **OPINION**
|      Defendants. | :
| | :
_____ :


**Wolfson, United States District Judge**:

Presently before the Court is a motion by Defendants Pappas Business Services, LLC

("Pappas Business"), Gary J. Pappas, and Mary E. Pappas (collectively "Defendants") to dismiss

Counts Two, Four, Six, and Seven of Plaintiff State Capital Title & Abstract Company's

("Plaintiff") Amended Complaint.[1]  Plaintiff alleges (1) breach of contract, (2) breach of the duty

---

[1]During the consideration of the present Motion, Plaintiff filed a Motion to Amend its
Complaint on December 11, 2008.  The Federal Rules of Civil Procedure permit a party to
amend a pleading "once as a matter of course at any time before a responsive pleading is served."
A motion to dismiss for failure to state a claim must be made "before pleading if a further
pleading is permitted." Fed.R.Civ.P. 15(a). "Thus, in the typical case in which a defendant asserts
the defense of failure to state a claim by motion, the plaintiff may amend the complaint once 'as
a matter of course' without leave of court." Shane v. Fauver, 213 F.3d 113 (3d Cir. 2000 (citing 2
James Wm. Moore et al., Moore's Federal Practice § 12.34[5], at 12-76 (3d ed.1999).  Here,
Defendants object to Plaintiff's Amended Complaint.  As a result, Plaintiff attempted to correct
the alleged deficiencies with a second proposed Amended Complaint filed December 28, 2008.
Except for the addition of a fraud in the inducement claim and factual allegations to substantiate
the additional claim, Plaintiff's second Amended Complaint remains virtually the same as its
original Complaint and first proposed Amended Complaint. Thus, pursuant to Rule 15(a), the

of loyalty, (3) breach of the covenant of good faith and fair dealing, (4) common law fraud, and

(5) violation of the New Jersey Consumer Fraud Act.  Plaintiff also asks this Court to pierce the

corporate veil of Pappas Business Services, LLC, and hold Mary and Gary Pappas individually

liable for the alleged losses suffered by Plaintiff.  In addition, Plaintiff asks this Court for leave to

file an Amended Complaint. For the reasons that follow, Defendants' Motion is granted and

Counts Two, Four, Six, and Seven are dismissed. In addition, this Court grants Plaintiff leave to

file an Amended Complaint, consistent with this Opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Since Defendants moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P.

12(b)(6), all facts alleged in the complaint are assumed to be true.

Plaintiff is a corporation which provides New Jersey-certified UCC and corporate searches,

assists in document filing, certificates of regularity, and provides search abstracts to attorneys,

lenders and title agencies. Pl.'s Compl. ¶1.  Pappas Business is a consulting business currently

located in North Carolina that up until recently maintained its principle place of business and

limited liability status in New Jersey.  Id. ¶2. In addition to consulting, Pappas Business serves as

a contract negotiator and technology adviser for various corporate clients.  Id. Gary Pappas is the

managing member of Pappas Business and Mary Pappas serves as an employee and member of

the firm as well.  Id. ¶ 3.

On December 17, 2003, Plaintiff entered into an agreement with Pappas Business ("the

_____

Court shall consider the first Amended Complaint proposed by Plaintiff in the consideration of
this Motion.  Because Plaintiff has proposed a second Amended Complaint, this Court must
determine whether its proposed amendments should be permitted, guided by the principle that
"leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

Agreement") whereby it would provide consulting services with respect to a new service Plaintiff was developing, the judgment search data warehouse project ("JSDW").  Id. ¶5. During the negotiations, the principals of Pappas Business represented to Plaintiffs that they would exercise an undivided duty of loyalty to State Capital.  JSDW is described vaguely by Plaintiff as "a program which would dramatically increase [Plaintiff's] ability to provide services to its clients, and moreover, to seek additional clients" and its development and launch came "at a great cost. . .due to its complexity."  Id. ¶8. As a result, Plaintiff trusted Defendants and provided them with great latitude to perform their contractual obligations.  Pursuant to the Agreement, Pappas agreed to provide weekly project management review of all meetings at all required levels internally and externally, to attend weekly status meetings on Plaintiff's behalf, and review and evaluate all technology proposals and contracts.  Id. ¶5. Gary and Mary Pappas were responsible for the consulting services provided by Pappas Business under the terms of the Agreement.  Id. One of Defendants' main responsibilities under the Agreement was to engage and undertake contract negotiations on Plaintiff's behalf.  Plaintiff alleges that in fact, "[Gary] Pappas advised all vendors that he was the lead negotiator for State Capital." Id. ¶7.

Sometime in March 2004, Plaintiff introduced Defendants to Contemporary Software Concepts, Inc. ("CSC"), a potential vendor willing to assume the remaining portion of the JSDW project. Id. ¶9. At no time before March 2004 did Defendants have a prior business relationship with CSC. Id. Throughout the CSC negotiations, Gary Pappas represented to Plaintiff that he had negotiated in good faith with CSC and had secured a contract at the "best possible price for State Capital." Id. ¶10. According to Plaintiff, Gary Pappas remained active in CSC's work with the JSDW project. Id. ¶11. Upon completion of JSDW, Plaintiff terminated its relationship with

Defendants.  Id. ¶13.

It was only after JSDW was completed and the business relationship between Plaintiff and Defendants terminated that Plaintiff learned that Defendants, through Gary Pappas, had entered into an undisclosed agreement with CSC on October 28, 2004.  Id. ¶14. The agreement stipulated that Defendants were to receive a 10% commission on any amounts received by CSC from Plaintiff for work performed by CSC on JSDW.  Id. ¶15. Additionally, the agreement provided that CSC would remit $25,000 to Defendants upon execution of the agreement.  Id. Before the agreement was executed, Plaintiffs allege that Gary Pappas informed CSC "that if they did not enter into this agreement, that [Gary Pappas] would find another vendor who would and that he would throw them off of the project." Id. ¶14. As a result of this alleged agreement, Plaintiff maintains that Defendants were performing their contractual duties under a clear conflict of interest, resulting in damages to Plaintiff.  Essentially, Plaintiff characterizes the October 28th agreement as a "kickback" arrangement between Defendants and CSC, that hindered Defendants' ability to negotiate and perform their contractual duties in good faith.  In December 2005, Christopher Eler, a State Capital principal, contacted Gary Pappas to discuss his concerns that Defendants may have secretly negotiated a side agreement with CSC.  Id. ¶12. Plaintiff contends that Gary Pappas falsely represented to Eler that no agreement existed between Defendants and CSC.  Id. As a result of this alleged misrepresentation, Plaintiff maintains it continued to do business with Defendants for an additional two years, presumably through 2007. Id.

Plaintiff filed this action in the Superior Court of New Jersey, Mercer County Vicinage, on June 6, 2008.  Pursuant to 28 U.S.C. § 1446, Defendants removed this action to United States District Court for the District Court of New Jersey.  In their Notice of Removal, Defendants

contend removal is proper because at the time Plaintiff filed its Complaint, both Gary and Mary Pappas were domiciled in North Carolina and Pappas Business was incorporated as a North Carolina limited liability company.  On July 25, 2008, Defendants filed this Motion to Dismiss Counts Two, Four, Five, and Seven of Plaintiff's Complaint.  Plaintiff filed a Motion to Amend its Complaint on December 11, 2008.  In its Motion to Amend, Plaintiff included a proposed amended complaint.  In their opposition, Defendants asserted that Plaintiff's proposed amended complaint still failed to adequately allege a fraud in the inducement claim.  Subsequently, Plaintiff filed a second proposed amended complaint on December 29, 2008. For the reasons that follow, Defendants' Motion to Dismiss Counts Two, Four, Six, and Seven of Plaintiff's Amended Complaint is granted.  In addition, the Court grants Plaintiff leave to amend its Complaint.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46).

Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

**B. Economic Loss Doctrine**

Defendants raise the economic loss doctrine as a bar to Counts Two and Four of Plaintiff's Complaint.  Specifically, Defendants argue that Plaintiff's claims of common law fraud and breach of the duty of loyalty flow directly as a consequence of the alleged contractual breach. "The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract."  Bracco Diagnostics Inc. v. Bergan Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002).[2]  In other words, whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties.  Capital Plus Equity, LLC v. Prismatic Development Corp., No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008) (citation omitted).  For instance, a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement.  Metex Manufacturing

---

[2]The Court notes that neither party has raised any choice-of-law issues in the instant matter; therefore, the Court will apply New Jersey law.  It appears that the relevant conduct occurred in New Jersey.

Corp. v. Manson, No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008);

Unifoil Corp. v. Cheque Printers & Encoders Ltd., 622 F. Supp. 268, 271 (D.N.J. 1985) (finding

that courts have "construed the law of New Jersey to prohibit fraud claims when the 'fraud

contemplated by the plaintiff. . .does not seem to be extraneous to the contract, but rather on

fraudulent performance of the contract itself.'").  In Bubbles N' Bows, LLC v. Fey Pub. Co, No.

06-5391, 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007), this Court elaborated on the

rationale for the economic loss doctrine, stating that "[t]ort principles, such as negligence, are

better suited for resolving claims involving unanticipated injuries, and contract principles are

generally more appropriate for determining claims for consequential damages that parties have or

could have address[ed] in their agreement."

    As a preliminary matter, the Court notes that Plaintiff asserts new allegations in its opposition

papers and evidentiary materials to this Motion, alleging, inter alia, that its common law fraud

claims arise from fraud in the inducement, and as such, the economic loss doctrine does not

apply.  However, on a 12(b)(6) motion, the Court may only consider the allegations as set forth in

the plaintiff's complaint, and a plaintiff is precluded from asserting new allegations in its

opposition papers or its evidentiary materials.  CNA v. United States, 535 F.3d 132, 138 n.3 (3d.

Cir. 2008) (finding that a district court may not look outside the pleadings when considering a

12(b)(6) motion). Accordingly, the Court will only look to the allegations in Plaintiff's first

Amended Complaint to determine whether the economic loss doctrine applies.

    Here, Count Four is devoid of any allegations that could be liberally construed to sufficiently

allege a fraud separate and distinct from the performance of the contract. In fact, Plaintiff's

allegations concerning Defendants' alleged fraudulent acts under Count Four arise from

7

Defendants' <u>performance</u> of the agreement.[3] Notably, Plaintiff alleges "[p]ursuant to a Contract entered into between Defendants and Plaintiff, Defendants were to negotiate in good faith on behalf of Plaintiff with regard to any vendors and suppliers who were to provide materials or services for the JSDW project." Compl.¶ 30 (emphasis added). The allegations giving rise to the alleged fraud, the October 28th agreement with CSC, occurred months after Plaintiff and Defendants executed their contract. Clearly, Plaintiff alleges that Defendants breached the Agreement, and did so in fraudulent fashion.   Nonetheless, a claim of common law fraud that is intrinsic to the underlying agreement, as is the case here, is barred by the economic loss doctrine. How Defendants breached the contract, whether it be fraudulently or in mistaken good faith, is an issue to be resolved within the contours of contract principles.  Thus, after a liberal reading of Plaintiff's Complaint, this Court is unable to de-couple Plaintiff's allegations of fraud from Defendants' obligations under the contract.  Accordingly, Count Four of Plaintiff's Complaint is dismissed.

With respect to Count Two, the allegations are essentially identical to the ones set forth in Count Three of the Amended Complaint, a claim for breach of the covenant of good faith and fair dealing. "[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement." <u>Pickett v. Lloyd's & Peerless Ins. Agency, Inc.</u>, 131 N.J. 457, 467 (1993).This implicit duty ensures "neither party to a contract shall injure the right of the other to receive the fruits of the agreement." <u>Onderdonk v. Presbyterian Homes of New Jersey</u>,

---

[3]The Court notes that the economic loss doctrine does not bar a fraud claim pled in the alternative when the validity of the contract is in dispute.  <u>Shapiro v. Barnea</u>, No. 06-811, 2006 WL 3780647, at *4 (D.N.J. Dec. 21, 2006).  Here, Plaintiff does not dispute the validity of the contract.  To the contrary, Plaintiff emphasizes the validity of the contract and relies on it to impose a duty of loyalty on Defendants.

85 N.J. 171, 182(1981).  A defendant who acts with improper purpose or ill motive may be found liable for breaching the implied covenant if the breach upsets the plaintiff's reasonable expectations under the agreement.  Intarome Fragrance & Flavor Corp. v. Zarkades, No. 07-873, 2008 WL 5109501, at *6 (D.N.J. Dec. 2, 2008) (quoting DiCarlo v. St. Mary Hosp., 530 F.3d 255, 267 (3d Cir.2008)). Here, the allegations relevant to Count Two, taken as true, set forth a cognizable claim for breach of the covenant of fair dealing and good faith, a claim already plead in Count Three.  Thus, the Court finds that Count Two is duplicative of Count Three, and as such, is dismissed.

Alternatively, the economic loss doctrine bars Plaintiff's breach of loyalty claim as well.  In its Complaint, Plaintiff alleges:

> [p]ursuant to the Contract entered into between Defendants and Plaintiff, Defendants owed a duty of loyalty to State Capital to negotiate in good faith on behalf of state Capital with any potential vendors.  This duty of loyalty is implicit in the agreement between State Capital and Defendants, because Defendants were specifically retained to act in Plaintiff's best interest in negotiating contracts with potential vendors.

Compl. ¶21.  Here, the crux of Plaintiffs' breach of duty claim is that because Defendants agreed to act as Plaintiff's lead negotiator with respect to JDSW, Defendant was contractually obligated to do so in good faith and free of potential conflicts.  Plaintiffs fail to identify how these allegations are extrinsic to the underlying agreement.

However, Defendants fail to identify a case in this Circuit or in New Jersey holding that the economic loss doctrine explicitly applies to breach of the duty of loyalty claims.  Instead, Defendants rely on the broad general rule expounded on by the district court in Bracco that tort economic losses inextricably intertwined with contractual obligations are barred by the economic

9

loss doctrine.  Other circuits, for instance, have severely restricted the scope of the economic loss doctrine, limiting its application to product liability actions. See Giles v. General Motors Acceptance Corp., 494 F.3d 865, 876 (9th Cir. 2007) (describing the conflicting views of the economic loss doctrine among the circuits).   "While the state of New Jersey law in the application of the doctrine has been defined by the Third Circuit as a 'morass,'" Capitalplus Equity, LLC v. Prismatic Development Corp., No. 07-321, 2008 WL 2783339, at *5 (D.N.J. Jul. 16, 2008), district courts have consistently applied the economic loss doctrine to fraud and negligent misrepresentation claims.  Notwithstanding the lack of clear precedent on the issue, the focus of the inquiry as to whether the economic loss doctrine applies is not based on the general type of tort claim being asserted but rather whether the plaintiff's entitlement to economic losses flows directly from obligations set forth in a contract between the parties. If a plaintiff's harm is a result of a contractual breach, the economic loss doctrine bars those tort claims.  Accordingly, Count Two of Plaintiff's Complaint is dismissed.

### C. Count Five - New Jersey Consumer Fraud Act

Turning to Count Five, Defendants move to dismiss Plaintiff's New Jersey Consumer Fraud Act ("NJCFA") claim.  In its opposition, Plaintiff concedes that the NJCFA is inapplicable in the case at bar and does not oppose the dismissal of Count Five.[4] Accordingly, this Court finds that Count Five is dismissed.

### D.  Count Six - Piercing the Corporate Veil

---

[4]Although Plaintiff concedes that Count Five should be dismissed, Defendants correctly points out that Plaintiff failed to remove the NJCFA claim from both of its proposed amended complaints.  Nonetheless, the Court will dismiss Count Five of Plaintiff's first Amended Complaint given Plaintiff's prior concession.

Finally, Defendants move to dismiss Plaintiff's claim to pierce the corporate veil of Pappas Business and hold Gary and Mary Pappas individually liable for Plaintiff's alleged losses.  In response, Plaintiff contends that absent such action, Gary and Mary Pappas would be permitted to commit an egregious fraud at Plaintiff's expense whilst hiding behind Pappas Services' limited liability protections.

"We begin with the fundamental propositions that a corporation is a separate entity from its shareholders, Lyon v. Barrett, 89 N.J. 294, 300 [445 A.2d 1153] (1982), and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." N.J. Dept. Of Environmental Protection v. Ventron Corp., 94 N.J. 473, 500 (1983).[5] Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil.  Id.; Lyon, 89 N.J. at 300.  Moreover, piercing the corporate veil is not a mechanism by which legal liability is imposed per se, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form. Ventron, 94 N.J. at 500.  "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." Tung v. Briant Park Homes, Inc., 287 N.J.Super. 232, 240 (App.Div.1996).

In New Jersey, two elements must be shown to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the

_____

[5]Although the case at bar deals with a limited liability company and not a corporation, the corporate veil applies with equal force in the LLC context.  Beuff Enterprises Florida, Inc. v. Villa Pizza, LLC, No. 07-2159, 2008 WL 2565008, at *1 (D.N.J. June 25, 2008) (declining to determine whether the corporate veil of an LLC should be pierced on a motion to dismiss).

individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." The Mall at IV Group Properties, LLC v. Roberts, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005) (quoting 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations, § 41.30 (perm.ed., rev.vol.1999)).  However, even in instances where one individual shareholder or director dominates the corporate entity, "liability generally is imposed only where the [dominant party] has abused the privilege of incorporation by using the [corporate form] to perpetrate a fraud or injustice, or otherwise to circumvent the law." Ventron, 94 N.J. at 500.  In determining whether a unity of interest and ownership exists under the first prong, the Third Circuit has applied six non-binding factors to guide this inquiry:

> [1] gross undercapitalization ... [2] "failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988) (citations omitted). With respect to the second element, a plaintiff need not prove common law fraud but instead demonstrate that the defendants, via the corporate form, perpetrated "a fraud, injustice, or the like," a less exacting standard.   Group Properties, 2005 WL 3338369, at *3.

Here, Plaintiff asserts that Pappas Business is a closely held LLC with Gary and Mary Pappas as its sole officers.  "As such, there is a clear unity of interest and ownership between the personalities of the corporation and the shareholders such that a distinction no longer exists." Pl.'s Br. Pg. 8.  Defendants contend that Pappas Business is no different than any other closely

held LLC and Plaintiff's theory of recovery threatens to undo the presumption of limited liability afforded to shareholders and officers of a corporate entity.  This Court agrees. Taking the Plaintiff's allegations as true, Gary and Mary Pappas, through their business Pappas Business, fraudulently induced Plaintiff to enter into a contractual relationship that lasted a number of years.  Although Pappas Business is not alleged to have been incorporated for the sole purpose of defrauding others, the corporate veil may be pierced in instances where a corporate entity organized for lawful purposes perpetrates a fraud. Melikian v. Corradetti, 791 F.2d 274, 281 (3d Cir. 1986) (finding that a "subsidiary need not have been created with the intent to defraud, but if it is used to perpetuate a fraud, then the doctrine may apply.") (citing Fortugno v. Hudson Manure Company, 51 N.J.Super. 482 (App.Div.1958)).

Nonetheless, even if this Court assumes arguendo that Defendants' conduct is of the type sufficient to justify piercing the corporate veil, Plaintiff fails to allege any of the Craig factors; the Complaint does not allege undercapitalization, siphoning of funds, or a complete disregard for the corporate structure and record keeping. Neither Gary or Mary Pappas are alleged to have so dominated Pappas Business' corporate structure as to render the corporate structure a sham. In sum, it appears that Pappas Business is an example of a small, closely held corporation that is comprised of less than five members, not a sham corporate entity set up to defraud individuals and businesses and evade personal liability.  As stated supra, a court is not obligated to pierce the corporate veil in the case of a corporation that is comprised of only one shareholder or member because, quite obviously, that one member must dominate the corporate entity if the business is to function and be profitable.  Clearly, by Plaintiff's logic, the members of a small, closely held corporation would be subject to individual liability in any instance where they are accused of a

13

fraudulent breach of contract.  However, piercing the corporate veil is an extraordinary exception

to the principle that shareholders and members of a corporate entity are shielded from individual

liability.   Accordingly, Count Seven of Plaintiff's Amended Complaint is dismissed.

**E. Motion to Amend Complaint**

Turning to Plaintiff's request to file an amended pleading, Defendants initially argued that

Plaintiff's first Amended Complaint was insufficient to state a claim for fraud in the inducement,

and as such, the amendments would be futile.  However, since Defendants filed their opposition

papers, Plaintiff has submitted a second proposed Amended Complaint in an attempt to cure any

defects.

When considering a motion to amend, "[t]he Supreme Court has instructed that although 'the

grant or denial of an opportunity to amend is within the discretion of the District Court, ...

outright refusal to grant the leave without any justifying reason appearing for the denial is not an

exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of

the Federal Rules.'" Shane, 213 F.3d at 115 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962).

Nonetheless, a court may deny a plaintiff leave to amend for a variety of reasons, including

undue delay, bad faith, dilatory motive, prejudice and futility.  In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1434 (3d Cir.1997); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Under Third Circuit precedent, a "futile" amendment is one that fails to state a claim upon which

relief could be granted.  Burlington, 114 F.3d at 1434; Grayson v. Mayview State Hospital, 293

F.3d 103, 113 (3d Cir. 2002). Thus, in determining whether a complaint, as amended, is futile,

the District Court must apply the sufficiency standard set forth under Rule 12(b)(6).  Shane, 213

F.3d at 115. "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the

14

plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." Id. Here, Defendants challenge the sufficiency of Plaintiff's recently added count, a fraud in the inducement claim, on the grounds that such amendment is futile, and does not satisfy the rigorous pleading standards of Fed. R. Civ. P. 9(b).

Rule 9(b) requires "[i]n all averments of fraud…, the circumstances constituting fraud. . .shall be stated with particularity." Fed. R. Civ. P. 9(b). In Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004), the Third Circuit expounded on the heightened pleading standard imposed on allegations of fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.  See [Saporito v. Combustion Eng'g, 843 F.2d 666, 675 (3d Cir.1988)]; Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998); Klein v. General Nutrition Cos., 186 F.3d 338, 345 (3d Cir.1999).

Thus, the nature or subject of the fraud, or an indication of who made the alleged representations and to whom, must be set forth in the plaintiff's pleadings. A-Valey Engineers, Inc. v. Board of Freeholders of Camden, 106 F. Supp. 2d 711, 716 (D.N.J. 2000).  The Rule's heightened pleading requirement "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."  Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp.

2d, 494, 511 (D.N.J. 2000).

A cognizable fraud in the inducement claim must contain "a misrepresentation of material fact; knowledge or belief by the defendant of its falsity; intent that the other party rely on the misrepresentation; and reasonable reliance thereon by the other party." <u>Jewish Center of Sussex County v. Whale</u>, 86 N.J. 619, 623 (1981). "Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." <u>Alexander v. CIGNA Corp.</u>, 991 F. Supp. 427, 435 (D.N.J.1998). However, a party is fraudulently induced to enter into an agreement when "'a knowing misstatement has been made, on the basis of which the defrauded party signs the instrument.'" <u>Metex Mfg. Corp. v. Manson</u>, No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008) (quoting <u>Deerhurst Estates v. Meadow Homes, Inc.</u>, 64 N.J.Super. 134, 144 (App. Div.1961).

In the instant matter, Defendants contended, in their opposition to Plaintiff's first Amended Complaint, that Plaintiff could not sustain a fraud in the inducement claim. Specifically, Defendants argued that the Complaint alleged misconduct occurring during the performance of the contract when a cognizable fraud in the inducement claim can only occur during contract formation or modification. In an effort to remedy this deficiency, Plaintiff proposed an amended pleading, that alleges <u>inter</u> <u>alia</u>, the following:

> During the negotiation of the consulting services agreement, the principals of Pappas Business Services made numerous misrepresentations to the principals of State Capital that they would exercise an undivided duty of loyalty to State Capital and that they would negotiate the best prices on any and all contracts with potential vendors free of any conflicts of interest. At the time Defendants made these representations, they knew they were false, as they intended to enter into secretive agreements with vendors of State Capital by these vendors. Defendants

16

also knew that Plaintiff would rely upon their false statements as to their exclusive duty of loyalty in deciding to enter into the consulting services agreement.  In fact, Plaintiff did rely upon Defendants' false statements, and placed a great deal of weight upon their purported truthfulness.  As such, Defendants' false statements induced State Capital to enter into the contractual agreement.

Amended Compl. ¶6.  The Court finds these recently amended allegations are sufficient to state a cause of action for fraud in the inducement.  Defendants, presumably through Gary Pappas, made representations before the agreement was consummated that Plaintiff ultimately relied on to its detriment.   Under 9(b), although a plaintiff must plead with particularity the circumstances surrounding the alleged fraud, a plaintiff need only plead generally with respect to the defendant's state of mind.  Shulton, Inc. v. Optel Corp., No. 85-2925, 1986 WL 15617, at *14 (D.N.J. Sept. 29, 1986) (finding that in a fraudulent inducement claim, a plaintiff may plead intent generally under Fed. Civ. R. P. 9(b)); Fed. R. Civ. P. 9(b).  Thus, Plaintiff's general allegations regarding Defendant's knowledge and intent to deceive Plaintiff are sufficient under 9(b).  Accordingly, the Court grants Plaintiff leave to amend its Complaint to assert a claim for fraud in the inducement.

## III. CONCLUSION

For the foregoing reasons, Counts Two, Four, Six and Seven are dismissed. However, Plaintiff may amend its Complaint to assert a claim for fraud in the inducement as plead in its second Amended Complaint.


Dated January 13, 2009                                       /s/ Freda L. Wolfson
                                                             Freda L. Wolfson, U.S.D.J